**Mary Schultz** (CSB No. 231962)
MARY SCHULTZ LAW, P.S.
2111 E. Red Barn Lane,
Spangle, WA 99031
Tel:    (509) 245-3522, Ext. 306
Mary@MSchultz.com

Attorney for Plaintiff Tayo Daramola

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| | **Case No.** |
| | **COMPLAINT FOR:** |
| **TAYO DARAMOLA,** | (1) Violation of Whistleblower Protections under the Sarbanes-Oxley Act (18U.S.C. § 1514A *et seq.*); |
| **Plaintiff,** | (2) Violation of Whistleblower Protections Under the Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. § 78U-6 *Et Seq.*); |
| **v.** | |
| **ORACLE AMERICA, INC.,** a Delaware Corporation, on its own behalf and through its wholly owned subsidiaries NetSuite Inc., and Oracle Canada, | (3) Violation of RICO (18 U.S.C. sec 1965) |
| | (4) Retaliation under California Labor Code § 1102.5; |
| **Defendant.** | (5) Wrongful Termination in Violation of Public Policy |
| | **DEMAND FOR JURY TRIAL** |
| | (UNLIMITED CIVIL) |

Plaintiff TAYO DARAMOLA (hereinafter "DARAMOLA" or "Plaintiff"), on behalf of himself, demanding trial by jury of all issues joined herein, alleges as follows:



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

**JURISDICTION AND VENUE.**

1.      Plaintiff Tayo Daramola is, and at all times mentioned herein was, a resident of Montreal, Quebec, Canada.

2.      Oracle is a corporation licensed to and authorized to do business in, employing individuals in, and existing under the laws of, the State of California, with its principal place of business in San Mateo County at 500 Oracle Parkway, Redwood Shores, CA 94065. 28 U.S.C.A. § 1391.

3.      Oracle resides in the Northern District of California, and its contacts with this District are sufficient to subject it to personal jurisdiction if this district were a separate State. 28 U.S.C.A. § 1391.

4.      Oracle is subject to this Court's personal jurisdiction because Oracle is authorized to transact business within the County of San Mateo, State of California.

5.      Oracle conducts and has conducted day-to-day commercial activities within the County of San Mateo. Oracle has thereby engaged in substantial, continuous, and systematic activities within the County of San Mateo, State of California, providing for a fair and reasonable basis for the exercise of personal jurisdiction over Oracle by this Court in this venue. 28 U.S.C.A. § 1391.

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as this is a civil action arising under federal law, and all claims, including state claims, form part of the same case or controversy, per the supplemental jurisdiction of 28 U.S.C. § 1367.

MARY
SCHULTZ
LAW, P.S.

2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

7.     Further, under 18 U.S.C. § 1961 *et seq.*, any civil action or proceeding may be instituted in the district court of the United States for any district in which Oracle resides, is found, has an agent, or transacts its affairs. 18 U.S.C.A. § 1965.

8.     Per 18 U.S.C.A. § 1964, Daramola was injured in his business and property by reason of a violation of 18 U.S.C. § 1962 and may sue therefore in this appropriate United States District Court.

9.     Venue is proper in the Northern District because Oracle exists, employs, directs employees, manages employees, communicates with employees and customers from, and operates in and from this district. Furthermore, all claims alleged herein arose as the result of actions conducted in and directed from this District, and subject to the supervision and direction of Oracle in this District.

10.    Pursuant to 18 United States Code section 1514A(b), on April 11, 2018, Daramola filed a timely complaint under the Sarbanes-Oxley Act with the Department of Labor's Occupational Safety and Health Administration, notifying the agency of Act violations and the facts and theories to support the violations.

11.    The Department of Labor did not issue a final decision on the administrative complaint within 180 days of the filing, without any fault of Daramola, thereby entitling Daramola to file this action in federal court.

12.    Daramola has complied with all Sarbanes-Oxley administrative exhaustion requirements.

MARY SCHULTZ LAW, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

## INTRADISTRICT ASSIGNMENT.

13.     This action arises in San Mateo County as a substantial part of the events or omissions giving rise to the claims occurred in San Mateo County.

## FACTS OF EMPLOYMENT

14.     Daramola was an employee of Defendant Oracle America, Inc. through and including its wholly owned subsidiaries NetSuite, Inc, and Oracle Canada (hereafter collectively referred to as "Oracle," "Defendant(s)" or "the Company").

15.     Daramola was employed with Oracle from November 30, 2016 until his constructive discharge on October 13, 2017.

16.     Daramola was hired by Oracle to perform work in the United States, exclusively with United States customers, supervised by United States personnel, and subject to Oracle policies, procedures, and business practices.

17.     Oracle committed Daramola to an Oracle Proprietary Information Agreement confirming that Oracle Corporation and its subsidiaries and its affiliates were to be considered collectively as "Oracle", and that he was employed by an Oracle entity.

18.     Oracle's NetSuite also committed Daramola to an employment agreement which applied California Labor Code's section 2870 to Daramola as part of his employment.

19.     Daramola was at all times subject to Oracle Inc. employment, direction, and policies.

20.     The material acts causing the injury claimed of herein occurred from and via their origin in the United States, in conjunction with and against Oracle's United States



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

based customers, through actions taken by Oracle supervisory personnel in the United States in and including directing Daramola to act with and against its United States customers.

21.     The material acts causing harm, including but not limited to, management conferences, supervisor directives, customer calls and conferences, misleading statements, and alleged internal investigations, occurred over wire and electronic communications such as email, texts, and contracts transmitted via electronic communication and mail.

22.     The wire and electronic communications all originated from and via Oracle's central server in San Mateo County, California.

## FACTS ALLEGED.

23.     Daramola was employed by Oracle, and promoted to the position of a project manager in a critical "cloud" service being expanded by Oracle, and known and touted by Oracle as the Cloud Campus BookStore initiative.

24.     Because of Daramola's work quality, diligence, performance, and work ethic, Daramola was assigned by Oracle to work as a project manager on this major project involving its critical United States' customers.

25.     Daramola was placed under the supervision of United States based manager Douglas Riseberg, and was thereafter in routine coordination and communication with an Oracle Executive team which included Oracle top executives, including but not limited to, Pat Merrell (Regional Vice President), and Debasmita Patniak (Regional Vice President).

26.     Daramola was assigned to work on projects with the state of Washington via work with the University of Washington-Seattle, also known as "University Book Store or



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

UBS", the state of Oregon via work with the University of Oregon- a.k.a. "The Duck Store", the state of Texas via University of Texas at Austin, a.k.a. the Co-op, and the state of Utah via work with Brigham Young University, a.k.a. The BYU Store, and he was invited to work with the state of California on a project with the University of Southern California, via the USC- Pertusati Bookstore.

27.     Oracle and NetSuite publicly promoted "verticals" in core industries, and "microverticals" in three areas—Ad Agencies, Apparel, and "Campus Bookstores."

28.     Daramola gradually became aware that a large percentage of the major projects to which he was assigned were in an "escalation" status with customers because Oracle had sold his customers software products it could not deliver, and that were not functional.

29.     Daramola came to understand that the products sold to United States customers in many cases did not exist, were not functional, and/or had not been developed at the time of the sale to the customer, or yet to date, and that this was the origin of the multiple situations in escalation status.

30.     Daramola came to realize that his job as a project manager for these United States customers was to ratify and promote Oracle's repeated misrepresentations to the customers as to the product's delivery status, under the premise of "managing the customer's expectations," and to do so by, e.g. making, ratifying, and being an accomplice to false affirmative statements made to Daramola's customers and the omission of material information the customer should have known related to the lack of development and functionality of the products his customers had acquired from Oracle.



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

31.     This "project management" strategy was intended to gain Oracle "runway" (time) to develop and obtain functionality for the non-existent software products Oracle had already sold to the customer while representing their existence and deliverability as of the time of sale.

32.     Plaintiff's Oracle supervisor, as well as Oracle management, were all aware of and discussed over electronic means, including by phone, conference calls, the web, email and texts, the need for "runway" so that Oracle could fund and develop the non-functional and undeveloped products already sold to customers, with delivery already promised, and the necessity of "managing customer expectations" by affirmative representations and material omissions to gain this runway.

33.     Oracle's microvertical cloud service was and had been repeatedly publicly touted by Oracle's executives by press release, conferences with investors and shareholders, as a major area of Oracle business which was ready to spearhead and maintain Oracle's position in the Cloud service industry, and thereby increase Oracle's share and investment value.

34.     Daramola thus understood that Oracle's project manager "expectation management" plan included is making, ratifying, and participating in a process of affirmative misrepresentation, material omission, and likely fraud.

35.     Daramola began resisting participation in this task of misrepresentation, ratification, and likely fraud as he sought further information on what he sensed was transpiring.



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

36.    Upon verification that products sold to his customers had indeed not been developed and were not deliverable, and that he was being asked to apply his role as a project manager to pretend to the customer that the products were developed and deliverable, on August 3, 2017, Daramola refused to participate in such misrepresentation to the customer.

37.    Daramola's supervisor would reasonably have known and understood, and did know and understand, that Daramola's refusal to participate in this fraud was because Daramola believed the actions being demanded of him were in violation of the law and fraudulent.

38.    From August 4 to October 13, 2017, Oracle demoted Daramola, stripped him of meaningful responsibility, taunted him (retaliated) by homework assignments regarding his pay, failed to investigate his internal complaints and requests for help, and ultimately constructively discharged him because Daramola recognized fraudulent behavior, refused to engage in it, and reported it internally as such.

39.    On August 14, 2017, Daramola submitted an internal complaint to Oracle and reported being retaliated against by his supervisors for refusing to engage in misrepresentation to his customers, and he reported what he believed to be regulatory and law violations.

40.    Daramola reported to Oracle personnel who he understood were tasked to address and investigate regulatory compliance concerns, including Dionis Gauvin and Douglas Harris.

MARY SCHULTZ LAW, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

41.     Daramola's belief that Oracle's behavior constituted law and regulatory violations was a reasonable belief, as the conduct he was asked to engage in in fact implicates and is tethered to securities fraud.

42.     Daramola reported to Oracle this reasonable belief that Oracle's behavior constituted law and regulatory violations, and that its conduct in fact implicates and is tethered to securities fraud.

43.     Daramola would continue to provide Oracle Internal reporting personnel evidence of the wrongdoings.

44.     Daramola willingly and in good faith submitted himself to four separate interviews with Oracle Internal reporting personnel over a course of two months, on August 22, 2017, August 24, 2017, August 25, 2017 and September 20, 2017.

45.     Daramola would continue to tell Oracle Internal reporting personnel that he was being retaliated against and stripped of responsibility by his supervisor.

46.     Oracle's internal reporting personnel provided him no relief, no protection, and strung him along asking the same questions, engaging in obfuscation, and asking for the same information interview after interview.

47.     Oracle retaliated against Daramola through its reporting structure by failing to protect Daramola from supervisory retaliation, it ratified his supervisor's retaliation, it failed to restore his position or meaningful work, it strung him along in interviews designed to convince him that nothing being done was wrong, and to thereby cause him to either relent and go along with the process and/or quit.



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

48.    The retaliation included reporting personnel asking Daramola to explain the same things over and over, their pretending to not know what he was talking about, their engaging him in interview after interview while doing nothing, and their attempting to shape his report by manipulating him into agreeing that what he was reporting was not impropriety.

49.    Ultimately, Oracle Vice President Douglas Harris directed/asked Daramola to confirm that Daramola was not intending to report improper or inappropriate behavior by Oracle, to which Daramola responded that he was indeed reporting just that.

50.    On August 16, 2017, Daramola filed a report with the Securities and Exchange Commission (SEC) reporting what he reasonably believed to be Oracle's regulatory violations, and he linked his August 14 internal report to Oracle for the SEC.

51.    Oracle was then engaged in a pattern of conduct intended to force Daramola to resign, including maintaining Daramola in the untenable position of repeating reports of illegalities by and against his own supervisor, refusing to place Daramola under a different supervisor, and ratifying the little to no meaningful work Daramola was now assigned.

52.    While Daramola was essentially unassigned, Oracle tested whether Daramola would fall into line given the retaliatory treatment.

53.    Daramola's supervisor Riseberg invited him to "come aboard" another plan of misrepresentation by offering to assign him to a Campus Suite project at the University of Southern California (USC).

54.    When Daramola asked if the same type of issues existed with that project, Daramola's supervisor immediately revoked the offer.



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

55.    Oracle then assigned a new "evaluator manager" to Daramola who downgraded Daramola's job performance.

56.    The foregoing was also retaliation.

57.    By October 13, 2017, Daramola had no meaningful work, no meaningful work status, he was isolated, ignored as to pay he believed was owed, and suffering damage to his reputation and career.

58.    Daramola's working conditions were by then such that no reasonable employee could perform meaningful work, and constituted constructive discharge.

59.    Daramola had no option but to resign, and did so on October 13, 2017.

60.    Daramola was consigned to and committed to a non-compete agreement as a part of his employment and suffered inability to mitigate for twelve months thereafter.

### FIRST CAUSE OF ACTION.

**Retaliation under the Sarbanes-Oxley Act (18 U.S.C. § 1514A *et seq.*)**
(Against all corporate Defendants)

61.    Daramola repeats and re-alleges the allegations contained in the preceding paragraphs and incorporates the same by reference as though fully set forth herein.

62.    Daramola is an employee, and Oracle is an employer, within the meaning of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A *et seq.*

63.    Daramola engaged in activity that is legally protected under the Sarbanes-Oxley Act by reporting, resisting, and refusing to engage in conduct that he reasonably believed violated or would violate the law and the Act's requirements.

MARY
SCHULTZ
LAW, P.S.

2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

64.     Oracle's conduct following his protected activity constitutes unlawful retaliation, and culminated in Daramola's constructive discharge.

65.     As a proximate result of Oracle's conduct, Daramola suffered and continues to suffer harm, including but not limited to, lost earnings and other employment benefits, loss of future employment benefits, including insurance and pension, loss of medical insurance, humiliation, emotional distress, and mental pain and anguish, all in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this Court.

66.     In doing the acts herein alleged, Oracle acted with oppression, fraud, malice and in conscious disregard of Daramola's rights and Daramola is therefore entitled to punitive damages in an amount according to proof at trial.

67.     Daramola has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

68.     Daramola requests relief as described below.

## SECOND CAUSE OF ACTION.

### Retaliation under the Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. § 78u-6 et seq.) (Against all corporate Defendants)

69.     Daramola repeats and re-alleges the allegations contained in the preceding paragraphs and incorporates the same by reference as though fully set forth herein.

70.     Daramola is an employee, and Oracle is an employer, within the meaning of the Dodd-Frank Wall Street Reform and Consumer Protection Act.



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

71.     Oracle is a company with a class of securities registered under section 12 of the Securities and Exchange Act of 1034 ((15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)), and includes subsidiaries or affiliates whose financial information is included in the consolidated financial statements of Oracle, and employs officers and employees thereby.

72.     Daramola engaged in activity that is legally protected under the Dodd-Frank Wall Street Reform and Consumer Protection Act.

73.     Specifically, 15 USC § 78u-6(h)(1)(A)(iii) provides that an employer may not discharge or otherwise discriminate against an individual who makes disclosures required or protected under the Sarbanes-Oxley Act.

74.     Daramola made disclosures that are protected under the Sarbanes-Oxley Act by reporting, resisting, and refusing to engage in conduct that he reasonably believed violated or would violate the law, and by reporting such conduct internally to Oracle employees who had an obligation to report to the SEC, and by his own individually reporting to the SEC.

75.     Oracle's officers and employees demoted, harassed, and discriminated against Daramola in the terms and conditions of his employment following those lawful acts.

76.     Oracle's conduct following the above-described protected activity, which culminated in Daramola's termination, constitutes unlawful retaliation and discharge under the Act.



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

77.     As a proximate result of the conduct of Oracle, Daramola has suffered and continues to suffer harm, including but not limited to, lost earnings and other employment benefits, loss of future employment benefits, including insurance and pension, loss of medical insurance, humiliation, emotional distress, and mental pain and anguish, all in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this Court.

78.     In doing the acts herein alleged, Oracle acted with oppression, fraud, malice and in conscious disregard of Daramola's rights and Daramola is therefore entitled to punitive damages in an amount according to proof at trial.

79.     Daramola has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

80.     Daramola requests relief as described below.

### THIRD CAUSE OF ACTION.

**Racketeer Influenced and Corrupt Organization**
**18 U.S.C. § 1961 et seq.**
(Against all corporate Defendants)

81.     Oracle committed two or more acts within a 10-year period, which constitute a pattern of racketeering activity and are committed in the conduct of an enterprise, or Oracle conspired to conduct that pattern of racketeering activity. 18 U.S.C. §§ 1961-1968.

82.     Oracle's Campus Bookstore microvertical enterprise is an Oracle enterprise in which it is engaged in or affects interstate commerce.  18 U.S.C. §§ 1961-1968.



MARY SCHULTZ LAW, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

83.   Oracle's enterprise is effected via, originates from, and is completed through, wire and electronic communications originating from and via Oracle's central server in San Mateo County, California.

84.   Daramola was required by Oracle to engage in violations of the federal wire fraud statutes, 18 U.S.C. § 1343, by requiring him to participate in (1) the formation of a scheme in which artifice or deceit is employed to obtain something of value from its United States customers with the intention of depriving that customer/owner of that property; and (2) the use of interstate wire transmission by Oracle in furtherance of the scheme.

85.   Oracle's directive to Daramola was that he participate in a scheme or artifice to defraud, or to obtain money, by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire communication in interstate commerce, for the purpose of executing such scheme or artifice, in violation of 18 U.S.C.A. § 1343 (wire fraud).

86.   Oracle devised or intended to devise a scheme or artifice to defraud for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, via the post office, in violation of 18 U.S.C.A. § 1341 (mail fraud).

87.   The term "scheme or artifice to defraud" includes Oracle's scheme or artifice to deprive another of the intangible right of honest services.18 U.S.C.A. § 1346.

88.   Oracle's actions involved attempt and/or conspiracy in that it involved multiple personnel in its scheme, and multiple personnel were required to carry out the scheme. 18 U.S.C.A. § 1349.



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

89.     Oracle's scheme rose to, but need not have risen to, actionable fraud, and Daramola need not show that the scheme was ultimately successful or that the intended victim suffered a loss or that the Oracle secured a gain from the scheme.

90.     The scheme engaged in by Oracle was that Oracle sold software services to United States customers as services already developed and functional, which products Oracle knew were neither developed nor functional, and which were at the time of sale and thereafter intentionally misrepresented by Oracle to the customer as being developed and functional, and where the customer who acquired the services and software was unaware that such products were not developed nor functional at the time of sale or thereafter, and whereby Oracle would engage in business behavior to gain "runway" for the actual development of these products by engaging in such deceit such as assigning blame to the customer for the delay in delivery, and e.g. assigning the customer "homework," or claiming that the customer had failed to complete prior homework or steps.

91.     Daramola was wrongfully demoted and isolated for carrying out his civic duty to refuse to participate in this scheme and commit violations of law, and for reporting such deceitful and unlawful activity by his employer.

92.     Oracle's retaliation caused Daramola's constructive discharge, and that retaliation and discharge were proximately caused by Oracle's pattern of racketeering or criminal activity.

93.     Daramola's injury was by reason of Oracle's violation of § 1962.

_MARY_
_SCHULTZ_
_LAW, P.S._
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

94.     RICO injury occurred when Daramola was demoted, isolated and then left without any meaningful work or position, effectively firing him, for his refusing to participate in the employer's ongoing scheme of criminal activity.

95.     Oracle's actions accomplished a constructive discharge, that discharge was intended by Oracle, and constructive discharge was a foreseeable result of Oracle's behavior towards Daramola and caused by the Oracle's alleged pattern of racketeering activity.

96.     Oracle's retaliation was tied to Daramola's (1) whistleblowing; (2) reporting what was in fact a pattern of criminal acts by the employer; and/or (3) refusal to participate in an ongoing pattern of criminal acts within the scope of the federal RICO.

97.     Daramola is entitled to damages for his inquiries.

98.     Daramola should receive judgment for threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, per 18 U.S.C.A. § 1964.

## **FOURTH CAUSE OF ACTION.**

### **Retaliation (California Labor Code § 1102.5)**
(Against all corporate Defendants)

99.     Daramola repeats and re-alleges the allegations contained in the preceding paragraphs and incorporates the same by reference as though fully set forth herein.

100.    Oracle is subject to the California Labor Code § 1102.5 in its actions towards its employees, regardless of the state to which they assign that employee.

101.    Daramola's protected activity included complaints about, resistance to, and refusal to engage in, suspected violations of the law, including violations of the



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

Sarbanes-Oxley Act and the Dodd-Frank Wall Street Reform and Consumer Protection Act.

102.   As a proximate result of the conduct of Oracle, Daramola has suffered and continues to suffer harm, including but not limited to, lost earnings and other employment benefits, loss of future employment benefits, including insurance and pension, loss of medical insurance, humiliation, emotional distress, and mental pain and anguish, all damaging him in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this Court.

103.   In doing the acts herein alleged, Oracle acted with oppression, fraud, malice and in conscious disregard of Daramola's rights and Daramola is therefore entitled to punitive damages in an amount according to proof at trial.

104.   Daramola requests relief as described below.

### **FIFTH CAUSE OF ACTION.**

**Wrongful Termination in Violation of Public Policy**
(Against all corporate Defendants)

105.   Daramola repeats and re-alleges the allegations contained in the preceding paragraphs and incorporates the same by reference as though fully set forth herein.

106.   Daramola was constructively discharged on October 13, 2017.

107.   Oracle constructively discharged/terminated Daramola because he engaged in protected activity under each or all of the Sarbanes-Oxley Act, the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Racketeer Influenced and Corrupt Organization Act, California Labor Code section 1102.5, and California's Unfair



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

Competition Section 17200, the latter prohibiting unlawful, unfair or fraudulent business practices, including unfair, deceptive, untrue or misleading advertising. *Cal. Bus. & Prof. Code § 17200.*

108.   Daramola's constructive discharge was in violation of the public policy of the state of California as set forth in the above- cited statutes.

109.   As a proximate result of Daramola's discharge by Oracle, Daramola has suffered and continues to suffer harm, including but not limited to, lost earnings and other employment benefits, loss of future employment benefits, including insurance and pension, loss of medical insurance, humiliation, emotional distress, and mental pain and anguish, all to his damage in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this Court.

110.   In doing the acts herein alleged, Oracle acted with oppression, fraud, malice and in conscious disregard of Daramola's rights and he is therefore entitled to punitive damages in an amount according to proof at trial.

111.   Daramola requests relief as described below.

### **PRAYER FOR RELIEF.**

WHEREFORE, Plaintiff Tayo Daramola seeks relief from this Court in the following respects:

1.     For special and general damages according to proof;

2.     For punitive damages;

3.     For front pay in lieu of reinstatement, according to proof;

4.     For double back pay on the second cause of action;



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

5.      For treble damages under the third cause of action;

6.      For costs of suit incurred herein;

7.      For attorney fees on causes of action where fees are available by law;

8.      For prejudgment and post-judgment interest as available by law; and

9.      For such other and further relief as this Court may deem just and proper.

**DATED** this 3rd day of December, 2019.

Respectfully submitted,
**MARY SCHULTZ LAW, P.S.,**
**/s/MARY SCHULTZ**
Attorney for Plaintiff, CSB 231962
2111 E. Red Barn Lane, Spangle, WA 99031
Tel:  (509) 245-3522, Ext. 306
E-mail: Mary@MSchultz.com



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

## DEMAND FOR JURY TRIAL.

Plaintiff hereby demands a jury trial for each cause of action on which he is entitled to a jury trial.

**DATED** this 3rd day of December, 2019.

**MARY SCHULTZ LAW, P.S.,**
**/s/MARY SCHULTZ**

Attorney for Plaintiff, CSB 231962
2111 E. Red Barn Lane, Spangle, WA 99031
Tel: (509) 245-3522, Ext. 306
E-mail: Mary@MSchultz.com



2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308