UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYO E DARAMOLA,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE AMERICA, INC., et al.,<br><br>Defendants. | Case No. 19-cv-07910-JD<br><br>**ORDER RE DISMISSAL** |

In prior orders, the Court dismissed four individual defendants for lack of personal jurisdiction, after plaintiff Daramola had an opportunity for jurisdictional discovery. Dkt. Nos. 66, 74. The dismissal was based on a record indicating that Daramola lived and worked in Canada, the individual defendants all resided and worked outside California, and the key events alleged in the complaint occurred outside California. Dkt. No. 74 at 1. The Court specifically concluded that the use of defendant Oracle America's servers and online resources in California was not enough to demonstrate systematic contacts within the state for personal jurisdiction purposes. *Id.* at 2.

Defendants Oracle America and two remaining individuals within California, Douglas Harris and Patrick Merrell, ask to apply a similar extraterritoriality analysis to dismiss the claims of "whistleblower" retaliation in the second amended complaint (SAC) under the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), 15 U.S.C. § 78u-6, and related state law claims under the California Labor Code and Unfair Competition Law (UCL). They also ask to dismiss the Racketeer Influenced and Corrupt Organizations Act (RICO) claim, 18 U.S.C. § 1962(c), (d). *See* Dkt. No. 67 (SAC); Dkt. No. 76 (motion to dismiss). Dismissal is granted.

The salient allegations in the SAC are straightforward. At all pertinent times, Daramola lived in Montreal, Canada. Dkt. No. 67 ¶ 4. He was employed by Oracle Canada. *Id.* ¶ 5. He left his employment by sending a resignation letter to Oracle Canada in Montreal. *See* Dkt. No. 37-1, Ex. 5; Dkt. No. 45 at 2.[1]

The SAC is transparent about the lack of any meaningful connection between Daramola's employment and California. The SAC does not allege that Daramola was ever paid or worked in California, suffered an adverse employment action in California, or anything else that might tie his employment-based claims to the state. The only ostensible connection to California is the allegation that Oracle Canada, Daramola's employer, is said to be one of Oracle America's "wholly owned subsidiaries." *Id.* ¶ 5. Oracle America is headquartered in Redwood City, California. *Id.* ¶ 7. In Daramola's view, this means he was employed by Oracle America as the parent entity. *Id.* ¶ 5.

Not so. Daramola's wholly conclusory allegation of employment by Oracle America ignores the "fundamental principle that corporations, including parent companies and their subsidiaries, are treated as distinct entities." *Ahlstrom v. DHI Mortg. Co., Ltd.*, 21 F.4th 631, 636 (9th Cir. 2021) (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003)). The SAC does not allege any facts to plausibly suggest that the corporate forms may be disregarded for Daramola's claims under an alter ego or similar theory. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). Overall, the SAC is devoid of facts indicating that Daramola was employed by any entity other than Oracle Canada.

The Canada allegations in the SAC make relatively short work of Daramola's claims. Although our circuit does not appear to have directly addressed the question, the Second Circuit has concluded that, as a general rule, the retaliatory provisions of SOX and Dodd-Frank do not apply outside of the United States. *See Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 183 (2d Cir.

---

[1] The SAC incorporates this letter by reference as document "PEX 80," Dkt. No. 67 ¶ 279, and so the Court considers it here. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

2014) (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)); *see also Ulrich v. Moody's Corp.*, 721 F. App'x 17, 18 (2d Cir. 2018) (unpublished).

The Second Circuit has declined to define "the precise boundary between domestic and extraterritorial application," or "delineate types of contacts within the United States that would render an application of the statute domestic rather than extraterritorial." *Liu*, 763 F.3d at 179. Daramola banks on this to say that all of the relevant conduct occurred within the United States, mainly because he communicated with his supervisors and customers here, and on occasion traveled within the country. *See* Dkt. No. 79 at 8-9.

Even so, the express allegations in the SAC that Daramola lived in Canada at all pertinent times, and was employed by Oracle Canada, undermine the SOX and Dodd-Frank claims. Recent decisions by the Administrative Review Board (ARB) of the United States Department of Labor hold as much. For example, the ARB has determined that SOX protection did not apply to a U.S. citizen working in Tokyo and Hong Kong for a subsidiary of Morgan Stanley because SOX "does not have extraterritorial application." *See Garvey v. Morgan Stanley*, ARB Case No. 2020-0034, 2021 WL 3487408, at *2 (ARB July 16, 2021) (citing *Morrison*, 561 U.S. at 266-270). The ARB expressly determined that the complainant's "daily interactions" with supervisors and colleagues in the United States, and allegations that U.S. customers were being harmed, did not demonstrate "sufficient, tangible domestic contacts" to apply SOX. *Id*. This is so because "the location of the employee's permanent or principal worksite is the key factor to consider when deciding whether a claim is a domestic or extraterritorial application." *Hu v. PTC, Inc.*, ARB Case No. 2017-0068, 2019 WL 4917100, at *6 (ARB Sept. 18, 2019). Overall, "an adverse action which affected an employee at a principal worksite abroad does not become territorial because the alleged misconduct occurred in the U.S., or because it had, or would have, effects on U.S. securities markets, or because the alleged retaliatory decision was made in the United States." *Id*.

*Garvey* and *Hu*, among other similar decisions by the ARB, have the "power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219-21 (2d Cir. 2014) (same re ARB decision on SOX protection). Both sides relied on decisions by the ARB in their arguments, and so do not contend

3

otherwise. Daramola's citation to *Blanchard v. Exelis Sys. Corp.*, ARB Case No. 2015-031, 2017 WL 3953474 (ARB Aug. 29, 2017), is misdirected. The ARB has disavowed the extraterritoriality analysis in that decision. *See Hu*, 2019 WL 4917100, at *4 n.9. Daramola's mention of *SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019), is inapposite because the decision does not address the extraterritorial application of the SOX and Dodd-Frank retaliation provisions.

The California state law claims founder on the same extraterritoriality barrier. As a rule, California statutes are presumed not to have an extraterritorial application. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). The California labor laws should not "be applied to work performed *outside* of California by a *nonresident* even if that work is focused on activities and people actually in California." *McPherson v. EF Intercultural Found., Inc.*, 47 Cal. App. 5th 243, 271 (2020), *review denied* (July 22, 2020) (original emphasis) (cleaned up); *see also Diamond Multimedia Sys. Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1059 (1999) (relevant inquiry is whether "the conduct which gives rise to liability . . . occurs in California."). The same goes for the UCL. *Sullivan,* 51 Cal. 4th at 1207 (for work done outside of California, "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force."). These principles apply all the more forcefully here in light of the absence of facts in the SAC tying Daramola's claims to California.

The RICO claim is unavailing for different reasons. To start, "an employee who is wrongfully discharged for refusing to participate in an alleged pattern of racketeering activity lacks standing to sue" under 18 U.S.C. §§ 1962(c) and (d). *Reddy v. Litton Indus. Inc.*, 912 F.2d 291, 294-95 (9th Cir. 1990). Defendants made this observation in the motion to dismiss, and Daramola did not contest it. In addition, a plausible civil RICO claim must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and a variety of specific pleading allegations under the statute with respect to the alleged criminal enterprise, predicate acts, injury, and causation. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) ("Rule 9(b)'s requirement that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims.") (quoting Fed. R.

Civ. P. 9(b)); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986) (same); *see also United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (stating elements of a civil RICO claim). The SAC comes nowhere close to meeting these requirements or plausibly characterizing Oracle America as a racketeering enterprise.

The final question is whether Daramola should be permitted another opportunity to amend. The SAC is Daramola's third try at alleging plausible claims. He has had multiple opportunities since his employment with Oracle Canada ended in 2017 to allege enough facts to plausibly state his claims, and has come up short. Daramola stated in a declaration filed in opposition to the dismissal motion that he was asked to work in New York for a portion of his employment time with Oracle Canada. *See* Dkt. No. 78 ¶ 4. Why these ostensible facts were not presented in any iteration of the complaint is not clear. In any event, even if the declaration were considered, it does not alter the salient fact that Daramola was a Canadian employee who resided in Canada for all times pertinent to his claims. In these circumstances, further amendment is not warranted. The SAC is dismissed, and the case will be closed.

**IT IS SO ORDERED.**

Dated: June 7, 2022

JAMES DONATO
United States District Judge